**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION**

| | | |
|---|---|---|
| **TOREY GARTRELL,** | : | |
| | : | |
| **Petitioner,** | : | |
| | : | **NO. 3:06-CR-00033-1 (CAR)** |
| **VS.** | : | **NO. 3:11-CV-90093   (CAR)** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | **Proceedings Under 28 U.S.C. § 2255** |
| | : | **Before the U.S. Magistrate Judge** |
| **Respondent.** | : | |
| _____ | : | |

## RECOMMENDATION

Before the Court is Petitioner Torey Gartrell's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. Doc. 205. Petitioner was convicted of conspiracy to possess with the intent to distribute over fifty (50) grams of cocaine base, possession with the intent to distribute over twenty (20) grams of cocaine base, and two counts of maintaining drug involved premises. The Court sentenced Petitioner to 125 months imprisonment on each count to be served concurrently followed by five years of supervised release. In his motion, Petitioner makes several claims of ineffective assistance of counsel as well as claims of prosecutorial misconduct. Because Petitioner has failed to show that counsel's performance was constitutionally deficient or that he was prejudiced by any inaccurate statements made by the prosecutor, it is hereby **RECOMMENDED** that Petitioner's motion be **DENIED**.

## COURSE OF PROCEEDINGS

On September 18, 2007, a six count third superseding indictment was returned in this Court against Petitioner Torey Gartrell and co-defendants Kitty Smith and Adam Smith. Doc. 100. Count One charged Petitioner, Kitty Smith, and Adam Smith with Conspiracy to Possess with Intent to Distribute over 50 Grams of Cocaine Base in violation of 21 U.S.C. § 846 in

1

connection with 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii). Count Two charged Petitioner and Kitty Smith with Possession with Intent to Distribute Over 20 Grams of Cocaine Base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii). Counts Four and Five charged Petitioner and Kitty Smith with Maintaining a Drug-Involved Premise in violation of 21 U.S.C.  §§ 856(a)(1), 856(b) and 18 U.S.C. § 2.[1]

Petitioner and Kitty Smith were tried from December 10, 2007 to December 13, 2007. Docs. 171-174. The jury returned guilty verdicts convicting Petitioner and Kitty Smith of Counts One, Two, Four, and Five.[2] Doc. 129. Following Petitioner's objections to the Presentence Investigation Report prepared by the United States Probation Office, Petitioner was sentenced based on a sentencing guideline range of 121 to 151 months. On March 25, 2008, the Court sentenced Petitioner to 125 months imprisonment, to be followed by five years of supervised release. Doc. 140.

On March 31, 2008, Petitioner filed a notice of appeal. Doc. 152. Following a review of the entire record and a brief submitted by Petitioner's counsel pursuant to Anders v. California, 386 U.S. 738 (1967), the Eleventh Circuit affirmed Petitioner's convictions and sentence on August 19, 2009. Doc. 194. On October 23, 2009, the Eleventh Circuit denied Petitioner's petition for rehearing. Doc. 219-1. On January 12, 2011, Petitioner executed the instant Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. Doc. 205.

---

[1] Count Three charged Kitty Smith with Possession of Marijuana in violation of 21 U.S.C. § 844, and Count Six charged Adam Smith with Possession With Intent to Distribute Cocaine Base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 18 U.S.C. § 2. Doc. 100. Adam Smith pleaded guilty to Count Six in exchange for the Government's dismissal of Count One against Mr. Smith. 3:06-CR-00033-3, Doc. 146.
[2] Kitty Smith was also convicted of Count Three. Doc. 129.

**TIMELINESS OF THE SECTION 2255 MOTION**

Respondent contends that Petitioner's Section 2255 Motion should be dismissed as untimely. Because Petitioner submitted his motion within one year of his conviction becoming final, Petitioner's motion is not time-barred.

Pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), a motion pursuant to Section 2255 must be filed within one year of "the date on which the judgment becomes final." 28 U.S.C. § 2255(f)(1).[3] A judgment becomes final within the meaning of Section 2255 on the date that the Supreme Court issues a decision on the merits or denies a petition for a writ of certiorari. Kaufmann v. United States, 282 F.3d 1336, 1339 (11th Cir. 2002). If the petitioner fails to file a petition for writ of certiorari, the judgment becomes final on the date that the petitioner's time to file such a petition expires. Id. A petitioner's time to file a petition for writ of certiorari expires 90 days from entry of judgment by the Court of Appeals. Sup. Ct. R. 13. If a petition for rehearing is timely filed, the time to file the petition for writ of certiorari expires 90 days from the date of the denial of the petition for rehearing. Sup. Ct. R. 13; Close v. U.S., 336 F.3d 1283, 1285-86 (11th Cir. 2003).

In this case, Petitioner executed his petition within one year of his conviction becoming final. After the Eleventh Circuit entered judgment on Petitioner's appeal on August 19, 2009, Petitioner filed a petition for rehearing on September 7, 2009.[4] Doc. 205-3. Petitioner's request for rehearing was denied on October 23, 2009. Doc. 219-1. Because Petitioner did not petition for a writ of certiorari to the Supreme Court, Petitioner's conviction became final 90 days later, on January 21, 2010. Petitioner then had one year, or until January 21, 2011, to file the instant

---

[3] The one-year limitation may be triggered by other events described in 28 U.S.C. § 2255(f); however, none of these grounds is applicable in this case.
[4] Petitioner had 21 days, or until September 9, 2009, to file his motion for rehearing. See 11th Cir. R. 40-3.

Section 2255 motion. Petitioner timely filed his Section 2255 motion by executing the document on January 12, 2011. See Washington v. U.S., 243 F.3d 1299, 1301 (11th Cir. 2001) (under the mailbox rule, a prisoner's pro se Section 2255 motion is deemed filed the date it is delivered to prison authorities for mailing; it is further presumed that the motion was delivered to authorities the day it was executed).[5] As such, Petitioner's Section 2255 motion is not time-barred.

## FACTUAL BACKGROUND

Trial of Petitioner's case took place over four days. The Government presented its case in chief over three days, calling twelve witnesses. Neither defendant called any witnesses, but instead focused on cross-examination and closing arguments. The jury deliberated for approximately one day before returning a verdict. The substance of the Government's evidence and Petitioner's defense is outlined below.

### A.  The Government's case

The Government presented evidence at trial that Petitioner, co-defendant Kitty Smith, and other unindicted co-conspirators conspired to distribute cocaine base, otherwise known as crack cocaine. The Government presented testimony from investigating officers and other drug dealers. The evidence showed that Petitioner would buy powder cocaine from other dealers and then "cook" the powder cocaine into crack cocaine at the residences that he shared with Ms. Smith. Petitioner would then cut the crack cocaine into small pieces, weight it, and bag it for resale.

The investigation in the case involved the execution of warrants at two separate residences. The first warrant was executed at 257 Westchester Circle in Athens, Georgia on February 23, 2006. The second was executed at 240 Laurel Drive in Athens, Georgia on January

---

[5] Petitioner's motion was received by the clerk's office on January 21, 2011. As such, Petitioner's motion is timely filed absent the benefit of the prison mailbox rule.

19, 2007. On both occasions, officers found crack cocaine, digital scales with cocaine residue on them, baggies, a BB gun, and substantial amounts of cash. On each occasion it was determined that Petitioner and Ms. Smith were living at the residence where the warrant was executed.

The majority of the Government's case was presented through the testimony of lead investigator William Timothy Parker. Officer Parker testified that a search warrant was obtained for the Westchester Circle residence as well as an Oldsmobile vehicle that belonged to Petitioner. Doc. 171 at 41. While conducting surveillance of the house in anticipation of executing the search warrant, officers witnessed Petitioner leaving the house and shortly thereafter conducted a traffic stop. Id. at 43. After detaining Petitioner, officers found over $500 in Petitioner's pocket. Id. at 45. Petitioner then informed the officers that he had crack cocaine in his shoe. Id. at 45. After seizing the crack cocaine, the officers placed Petitioner in the back of the patrol car and proceeded to the Westchester Circle residence to execute the search warrant. Id. at 55.

Prior to entering the residence, Officer Parker read Petitioner his Miranda rights and Petitioner informed Officer Parker that there were approximately twenty grams of crack as well as digital scales on the kitchen counter of the residence. Id. at 59, 63. After Officer Fitzgerald knocked on the door of the residence, he observed Ms. Smith peer through the window, but she did not open the door. Doc. 172 at 155. Upon entering the residence, Officer Fitzgerald noticed that the water in the bathroom toilet was running, which he testified is consistent with possibility of contraband having been flushed down the toilet. Id. at 160.

During the search of the residence, the officers found drugs and drug paraphernalia. In the kitchen cabinets, the officers found a large quantity of crack cocaine, digital scales, and a glass Pyrex dish.  Doc. 171 at 64-65. In the kitchen sink, the officers found a second Pyrex dish and a fork. Id. at 65-66. The officers also found a spoon situated in a box of baking soda, a box

of rubber gloves, and a box of sandwich bags in the kitchen. Id. at 66. The scales, Pyrex jars, and fork all contained residue that tested positive for crack cocaine. Id. at 69-88.

Approximately two weeks after executing the warrant at Westchester Circle, Officer Parker was directed to seize Petitioner's Oldsmobile for forfeiture in light of the Federal investigation of Petitioner. Id. at 106. When officers attempted to initiate a traffic stop of Petitioner's vehicle, Petitioner bailed out of his vehicle and ran on foot into a house. Id. at 110, 113. Although nothing illegal was found on Petitioner's person, the officers found a silver hand scale and particles of crack cocaine in the vehicle. Id. at 114.

After learning that Petitioner and Ms. Smith had moved to Laurel Drive, the officers conducted a trash pull at 240 Laurel Drive. Id. at 118. The officers found plastic bags with cocaine residue and information that identified the residents and owners of the trash as Petitioner and Ms. Smith. Id. at 119. Two days later, the officers went back to Laurel Drive to execute search and arrest warrants. Doc. 172 at 16. Inside of the residence, officers seized $474 from Petitioner and also found a BB gun, plastic bags, digital scales, a number of cell phones, and close to five grams of crack cocaine. Id. at 18, 20, 23, 30.

The Government also presented testimony of two men who stated that they sold powder cocaine to Petitioner. Frazier Johnson testified that he sold cocaine to Petitioner approximately twice a week in late 2005. Doc. 173 at 7-8. Johnson stated that Petitioner would usually purchase sixty-two grams of powder cocaine. Id. at 8. Kaminsky Mitchell testified that he sold powder cocaine to Petitioner in 2004 and 2005. Id. at 54. Mitchell also testified that Petitioner had sold him powder cocaine on occasions. Id. Mitchell also stated that Johnson was his and Petitioner's primary source of cocaine. Id. at 55. Further, Mitchell testified that he and Petitioner had conversations about cooking the powder cocaine into crack. Id. at 57. Both Johnson and Mitchell

6

were incarcerated and awaiting sentencing at the time of Petitioner's trial, and each testified that his sentence could potentially be reduced in exchange for his testimony. Id. at 4, 22, 50, 60.

Additionally, the Government presented the expert testimony of Officer Kirk Graham. Officer Graham's testified about the process of converting powder cocaine into crack cocaine, the market value of cocaine, and the method of distributing crack cocaine. Id. at 76-109. Specifically, Officer Graham stated that powder cocaine is cooked into crack using pots, glass containers, and baking soda. Id. at 76-77. Officer Graham also explained that a drug dealer can make more money by purchasing powder cocaine and cooking it into crack than if the dealer were to buy crack cocaine and resell it. Id. at 85.

### B.  The Defense case

Petitioner's counsel argued that the Government had not presented enough evidence to prove that Petitioner had the criminal intent to possess crack cocaine with the intent to distribute. Through cross examination and closing argument, counsel discussed the types of evidence that the Government did not present. Specifically, counsel focused on the "500 pound gorilla in the room that nobody is talking about." Id. at 143. Counsel was referring to the fact that no one had testified that they witnessed Petitioner buy or sell crack cocaine. Counsel also noted that there were no wire taps or tracing devices used against Petitioner, although such resources were commonly used in drug investigations. Id. at 142. Additionally, counsel attempted to discredit the testimony of Johnson and Mitchell by reiterating that each man could benefit substantially by testifying against Petitioner. Id. at 142.

**DISCUSSION**

In his motion, Petitioner makes several claims that his counsel's performance was constitutionally ineffective at trial, at sentencing, and on appeal. Petitioner also alleges multiple instances of prosecutorial misconduct.[6] Because counsel's performance was not constitutionally deficient, and because Petitioner has failed to show that he was prejudiced by any inaccurate statements made by the prosecutor, Petitioner's claims are without merit.

Petitioner has requested an evidentiary hearing in this matter. Petitioner has the burden to establish the need for an evidentiary hearing, and the Court is not required to hold an evidentiary hearing where the record makes "manifest the lack of merit of a Section 2255 claim." United States v. Lagrone, 727 F.2d 1037, 1038. (11th Cir. 1984). As explained below in addressing each of Petitioner's grounds for relief, the files and records in this case are sufficient to show that Petitioner's claims are without merit, and no evidentiary hearing is necessary.

**A.  Ineffective Assistance of Counsel**

Petitioner essentially makes seven claims of ineffective assistance of counsel. Petitioner claims that his counsel was ineffective for: (1) failing to understand the law of conspiracy; (2) failing to seek acquittal on Count One after co-defendant Adam Smith was dismissed; (3) failing to object during the Government's opening statement; (4) failing to impeach witnesses Johnson and Mitchell; (5) failing to object to the sentencing enhancement for possessing a BB gun; (6) filing a fraudulent Anders brief; and (7) colluding with the Government.

---

[6] In his motion, Petitioner asserts three grounds for relief: that his counsel provided ineffective assistance of counsel, that his counsel committed fraud on the court in collusion with the government, and that the Government knowingly used false and fraudulent testimony of its witnesses. Doc. 205. Petitioner also submitted an Affirmation of Statement of Fact of Petitioner, which included five headings essentially claiming either ineffective assistance of counsel or prosecutorial misconduct. For the sake of clarity, Petitioners grounds are discussed as either ineffective assistance of counsel or prosecutorial misconduct.

The Sixth Amendment of the United States Constitution states that "in all criminal prosecutions, the accused shall enjoy…the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel provision guarantees the accused the right to effective assistance of counsel. McMann v. Richardson, 397 U.S. 759, 771, n. 14 (1970).  To prevail on a claim of ineffective assistance of counsel, the petitioner bears the burden of establishing by a preponderance of the evidence that: (1) his attorney's performance was deficient, *and* (2) he was prejudiced by the inadequate performance. Strickland v. Washington, 466 U.S. 668, 687 (1984); Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000). A petitioner must prove both prongs of the Strickland test to show his counsel was ineffective. Id.

To establish deficient performance, a petitioner must prove that his counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. Chateloin v. Singletary, 89 F.3d 749, 752 (11th Cir. 1996). A strong presumption exists that counsel's performance was reasonable and the challenged action constituted sound trial strategy. Id.   In order to establish that counsel's performance was unreasonable, a petitioner must show that no objectively competent counsel would take the action in question. Van Poyck v. Florida Department of Corrections, 290 F.3d 1318, 1322 (11th Cir. 2002).

To establish prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's inadequate representation, the outcome of the proceedings would have been different. Strickland, 466 U.S. at 697; Meeks v. Moore, 216 F.3d 951, 960 (11th Cir. 2000). Reasonable probability is defined as a "probability sufficient to undermine confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694). If a petitioner fails to prove that he has

suffered prejudice, the court need not address the deficient performance prong of the Strickland test. Holiday v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000).

The right to effective assistance of counsel applies equally to counsel on appeal of right as it does to trial counsel. Evitts v. Lucey, 469 U.S. 387, 396 (1985). The Eleventh Circuit has held that the Strickland standard applies to ineffective assistance of appellate counsel claims. Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991). Thus, to prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that his appellate counsel's performance was deficient and that the petitioner was prejudiced by the performance. Id. Further, counsel cannot be found ineffective for failing to raise every non-frivolous defense. Chandler, 218 F.3d at 1319. Counsel must use his or her judgment to determine which claims and arguments to emphasize, which may require counsel to rule out other non-frivolous claims and arguments. Id.

1.   Failure to understand conspiracy law

Throughout his motion, Petitioner argues that his counsel did not understand the law of conspiracy. Petitioner, who was charged with conspiracy under 21 U.S.C. § 846, claims that his counsel did not understand the difference between a conspiracy charged under 21 U.S.C. § 846 and a conspiracy charged under 18 U.S.C. § 371.  Petitioner also states that to the District Court Judge was confused about the difference between a Section 846 and a Section 371 conspiracy. Nothing in the record, however, indicates that counsel did not have a full understanding of conspiracy law.

The United States Code contains many different criminal conspiracy statutes. Section 371 is the general conspiracy statute, as it outlaws a conspiracy to commit a federal offense or defraud the United States. 18 U.S.C. § 371. Other federal conspiracy statutes outlaw a conspiracy to commit some specific offense, ranging from civil rights offenses (18 U.S.C. § 241) to drug

offenses (18 U.S.C. § 846). Section 846 is a specific-offense conspiracy statute that makes it illegal to conspire with another to violate a federal drug law. 21 U.S.C. § 846.

Every conspiracy requires: (1) an agreement (2) between two or more persons (3) to commit an unlawful act. See e.g., U.S. v Jimenez Recio, 537 U.S. 270, 274 (2003); United States v. Shabani, 513 U.S. 10, 16 (1994).[7] Participation in a conspiracy can be proved through circumstantial evidence. United States v. Lyons, 53 F. 3d 1198, 1201 (11th Cir. 1198). The agreement between co-conspirators, therefore, can be inferred from a development of circumstances indicating that a common purpose and plan exists to commit the unlawful act. Id. Additionally, a co-conspirator need not be indicted nor found guilty for a defendant to be guilty of conspiracy. U.S. v. Cabrera, 447 F.2d 956, 957 (5th Cir. 1971).

In this case, Petitioner fails to show that his counsel did not understand conspiracy law. Petitioner cites to his counsel's failure to object to the hearsay statement of a co-conspirator— and the Court's admitting the statement into evidence—as an example of the failure to understand the difference between a Section 846 and a Section 371 conspiracy. The statement at issue was admitted when the Government was questioning witness Frazier Johnson. Johnson testified that he and Orlando Muckle sold powder cocaine to Petitioner. Johnson was then asked, "[a]nd, at the time when you spoke to Orlando Muckle did he, at any point, confirm that he was also selling cocaine to Torey Gartrell?" Doc. 173 at 10. After Petitioner's counsel objected to the hearsay implied by the question, a bench conference was called. Petitioner's counsel argued that Muckle was not a co-conspirator because he did not have anything to do with the distribution of crack cocaine. The Court disagreed with Petitioner's counsel because "…you've got to be able to buy it from somebody to sell it to somebody…that seems like that is part of the conspiracy. Id. at

_____

[7] A Section 317 conspiracy also requires that at least one conspirator take an affirmative step in furtherance of the scheme. U.S. v. Shabani, 513 U.S. 10, 14 (1994). Section 846 does not have a similar overt act requirement. Id. at 513 U.S. 15.

12. The Court then allowed Johnson to answer the question pursuant to Federal Rule of Evidence 801(d)(2)(e), which excludes the statement of a co-conspirator as hearsay.

Counsel's performance was reasonable in this case because, despite Petitioner's allegations, counsel objected to the potential hearsay statement. The record shows that counsel objected to the testimony, a bench conference was held, and counsel further argued his point that that Muckle was not a co-conspirator. Despite counsel's arguments, the Court found that Muckle was a co-conspirator and overruled the objection. Moreover, Rule 801(d)(2)(e) applies to all conspiracies. See FED. R. EVID. 801. As such, Petitioner's argument regarding understanding the difference between a Section 846 and Section 371 in relation to the alleged hearsay statement is misplaced.

Petitioner's confusion regarding the difference between a Section 846 and a Section 371 conspiracy seems to lie in what he refers to as the "delusional notion of 'an overall conspiracy' [that] propagated itself throughout the entire trial…." Doc. 205-2. It appears that Petitioner objects to his being convicted of the "specific" Section 846 conspiracy to distribute crack cocaine when, in his mind, there was only evidence of an "overall" Section 371 conspiracy to distribute powder cocaine.[8] First, Petitioner's distinction between a Section 846 conspiracy and a Section 371 is inaccurate.[9] Second, the jury found that evidence presented at trial proved that Petitioner conspired with co-defendant Kitty Smith and other unindicted co-conspirators to distribute crack cocaine under 21 U.S.C. § 846, the conspiracy for which Petitioner was indicted. Accordingly, Petitioner's claim that his counsel did not understand conspiracy law is without merit.

---

[8] Petitioner makes this objection throughout his motion in various forms, including his counsel's failure to understand conspiracy law and counsel's collusion with the Government.

[9] As discussed above, Section 371 makes it illegal to conspire to violate any federal law, and Section 846 makes it illegal to conspire to violate a federal drug law.

2.   Failure to seek acquittal after co-defendant Adam Smith was dismissed from the Indictment

Petitioner contends that his counsel was ineffective for failing to move for an acquittal after Adam Smith was dismissed from Count One as part of a plea agreement. Petitioner argues that Adam Smith's dismissal from Count One resulted in an automatic acquittal "in substance and form" of Petitioner and Kitty Smith from Count One. In the Eleventh Circuit, it is established that not all co-conspirators need be indicted nor found guilty together for a conviction to stand. See United States v. Andrews, 850 F.2d 1557, 1561 (11th Cir. 1988) (holding that consistent verdicts are not required in joint trials for conspiracy and that a guilty verdict can stand where all but one of the charged co-conspirators are acquitted).[10] Accordingly, Adam Smith's dismissal did not warrant an acquittal for Petitioner. It was therefore reasonable for Petitioner's counsel to fail to move for acquittal based on the dismissal of Adam Smith from Count One. Moreover, Petitioner was not prejudiced by counsel's failure to move for acquittal because the Court would not have granted the acquittal for Petitioner based on the holding in Andrews.

3.   Failure to object during the Government's opening statement

Petitioner also argues that his counsel was ineffective for failing to object to the Government's remark during its opening statement that Kaminsky Mitchell would testify that he bought and sold crack cocaine to Petitioner.[11] The Government stated that "[y]ou will hear that Torey Gartrell sold crack to Kaminsky Mitchell…and you will hear what quantities of cocaine

---

[10] Although Andrews dealt with a jury acquitting a co-conspirator, the same reasoning applies to the Government dismissing the charge for one co-conspirator. After Adam Smith's dismissal from Count One, the Indictment at trial still alleged two named persons engaged in the conspiracy and therefore met the two person requirement to establish a conspiracy. See United States v. Parrado, 911 F.2d 1567, 1570 (11th Cir. 1990).

[11] Petitioner alleges that the Government stated that Johnson would testify about crack cocaine, but the transcript shows that the Government's statement referred to Mitchell.

and crack cocaine the Defendant, Torey Gartrell, was obtaining from these witnesses." Doc. 171 at 31-32. At trial, Mitchell testified that he only exchanged powder cocaine with Petitioner and that he never bought crack cocaine from Petitioner. Id. at 54.

Although Petitioner's counsel did not object to the distinction during the Government's opening statement, counsel brought the distinction to the jury's attention during his closing argument. In his closing argument, Petitioner's counsel stated:

> But, nevertheless, if you do choose to believe [Johnson and Mitchell], what did they talk to you about? They talked with you about selling powder cocaine. Ladies and gentlemen, as you see in Count One and Count Two of the Indictment this case is not about powder cocaine, this is about conspiracy to possess crack cocaine. So their testimony is not even really on point.

Doc. 173 at 142. Counsel therefore made a reasonable decision to argue during closing argument that there was no evidence of the drug dealers exchanging crack cocaine.

Even if it was deficient for counsel to fail to object to this distinction, Petitioner has failed to show that he was prejudiced. A variance between the Government's advance description of the evidence in its opening statement and the actual presentation does not constitute reversible error when a proper limiting instruction has been given. Frazier v. Cupp, 394 U.S. 731, 736 (1969). The Court twice gave the jury the limiting instruction that what the lawyers say is not evidence in the case. Doc. 171 at 23, Doc. 173 at 132. Because a proper limiting instruction was given, Petitioner was not prejudiced by counsel's failure to object to the variance.

4. Failure to impeach Johnson and Mitchell

Petitioner alleges next that his counsel was ineffective for failing to impeach Johnson and Mitchell. Petitioner contends that his counsel should have impeached the two witnesses using contradictions between the witnesses' testimony and pre-trial disclosures. Although Petitioner

14

claims that the witnesses should have been asked about the disclosures, Petitioner does not explain what the disclosures stated or what contradictions should have been revealed.

The transcript shows that counsel objected to the Government's line of questioning of Johnson regarding testimony at trial that was different from what was provided in pre-trial disclosures. Doc. 173 at 23. The Court therefore limited Johnson's testimony at that point to discussion of his opportunity to benefit from a 5K motion for assisting the Government's investigation. Id. at 24. Later during a bench conference, counsel informed the Court that he intended to call the police officers who took the pre-trial statements of Johnson and Mitchell. Id. at 114. Counsel stated that he wanted to call the officers in order to impeach Johnson and Mitchell by omission. That is, counsel wanted to elicit testimony that Johnson and Mitchell testified in court to facts that were inconsistent with their statements to the officers. Counsel could not impeach Johnson and Mitchell with the statements on cross-examination because the pre-trial statements were contained in the officers' reports rather than signed statements of Johnson and Mitchell. Id. at 115. Counsel ultimately decided not to call the officers to impeach Johnson and Mitchell "[j]ust as a matter of trial strategy[.] I think I can get that information out that the testimony is different than what was stated." Id. at 128.[12]

Counsel was not ineffective for failing to call the officers because he made the strategic choice to point out the differences between the testimony at trial and the pre-trial statements during his closing argument. Such trial strategies are "virtually unchallengeable." Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing Strickland, 466 U.S. at 690).

---

[12] Although counsel ultimately decided not to call the officers, it was not apparent that the Court would have even allowed the officers' testimony. After counsel indicated that he wished to call the officers, the Court responded "[w]ell, I'll think about that. I had actually already thought about that and it seemed to be problematic." Doc. 173 at 115.

Accordingly, Petitioner's claim that his counsel was ineffective for failing to cross examine Johnson and Mitchell is without merit.

     5.   <u>Failing to object to sentencing enhancement for possession of a BB gun</u>

     Petitioner contends that his counsel did not adequately object to the Government's sentencing enhancement under U.S.S.G. § 2D1.1(b)(1), which calls for a two-level enhancement for possession of a dangerous weapon. Petitioner states that but for counsel's response of "yes, Sir" to the Court's question regarding objections to the enhancement, counsel was silent on the issue. In fact, counsel filed an objection to the presentence investigative report in which he argued against the enhancement. Doc. 136. Specifically, counsel argued that although a BB gun can constitute as a dangerous weapon under U.S.S.G. § 2D1.1(b)(1), mere possession of a BB gun does not automatically give rise to the enhancement. Counsel further argued that the BB gun was seized during the execution of a search warrant and that no witness testified that Petitioner used or displayed the BB gun during any drug transaction. Counsel renewed his argument at the sentencing hearing, stating that there was no nexus between the BB gun and the distribution of the drugs. Doc. 177 at 3.

     The Court overruled counsel's objection to the enhancement. The Court found that although the BB gun was not a firearm, "…that BB gun looked very much like a Glock pistol, and it would be hard for somebody to know that it wasn't a Glock pistol…and what I think may be the rationale behind the enhancement is that if somebody came in there and they saw that…they may pull their gun and shoot somebody." <u>Id.</u> at 5. It is therefore clear from the record that, despite Petitioner's contentions, counsel raised the objection both prior to sentencing and at the sentencing hearing. As such, counsel's performance regarding the objection to the sentencing enhancement was reasonable and Petitioner's claim must fail.

6.  Filing a fraudulent *Anders* brief

Petitioner next claims that his counsel was ineffective for filing what Petitioner believes to be a fraudulent Anders brief. Because counsel followed the procedure established by the Supreme Court in filing his Anders brief, counsel's performance was reasonable.

In Anders, the Supreme Court set out a procedure for attorneys who wish to withdraw from representing a criminal defendant on appeal despite the defendant's request to appeal his conviction. See Anders, 386 U.S. at 744. When a defendant request for his attorney to appeal his conviction, but the attorney finds no meritorious issues to raise on appeal after full review of the record, the attorney may request to withdraw from representation. Id. In support of the his request to withdraw, the attorney must attach a brief citing issues that could arguably support an appeal and explain why the appeal would be frivolous. Id.; See United States v. Blackwell, 767 F.2d 1486 (11th Cir. 1985). The attorney must give a copy of the Anders brief to the defendant so the defendant may raise issues that he believes could warrant appeal. Anders, 386 U.S. at 744. The appellate court then fully reviews the record to determine whether there is any merit to an appeal. Id. If the appellate court finds that there is no merit to an appeal, the court will allow counsel to withdraw and dismiss the appeal. Id.

In this case, Petitioner's counsel followed the required procedure in filing his Anders brief. Counsel's brief stated that there were arguably two issues that could be raised on appeal: (1) whether the District Court abused its discretion in allowing the Government to introduce co-conspirator heresay pursuant to Fed. R. Evid. 801(d)(2)(E), and (2) whether the District Court abused its discretion in imposing its sentence. Doc. 205-3. Counsel then explained that he believed that the District Court did not commit error or abuse its discretion regarding the issues. Petitioner then filed a response to the brief arguing that it was fraudulent and that the two-step

enhancement was erroneously applied to his sentence. Doc. 205-3. After review of counsel's brief, Petitioner's response, and the record as a whole, the Eleventh Circuit affirmed Petitioner's conviction because it found nothing in the record warranting an appeal. Doc. 194.

Because counsel followed the required procedure in filing his <u>Anders</u> brief, his actions were neither deficient nor fraudulent. Moreover, Petitioner was not prejudiced by counsel's actions because the Eleventh Circuit determined that there were no appealable issues after review of the brief and the record as a whole. Accordingly, Petitioner's claim must fail.

    7.  <u>Collusion with the Government</u>

Petitioner alleges that his counsel colluded with the Government to obtain his conviction. Although Petitioner does not present any specific facts evidencing that his counsel was somehow working with the Government, Petitioner essentially argues that there was not enough evidence to support his conviction.[13] Petitioner's arguments focus on the lack of evidence of an agreement between the parties and the lack of evidence that he conspired to distribute crack cocaine rather than powder cocaine. Petitioner claims that the evidence consequently varied from what he was charged with in the Indictment.

The Indictment charged Petitioner with possession with intent to distribute crack cocaine and conspiracy to possess with intent to distribute crack cocaine. Possession with intent to distribute a controlled substance requires proof that the defendant (1) knowingly (2) possessed a controlled substance (3) with the intent to distribute it. <u>United States v. Morales</u>, 868 F.2d 1562, 1573 (11th Cir. 1989). The elements can be proved by direct or circumstantial evidence. <u>United States v. Poole</u>, 878 F.2d 1389, 1391-92 (11th Cir. 1989). Constructive possession consists of the knowing power or right to control the substance, and can be proven by circumstantial evidence.

---

[13] Petition cites counsel's failure to object to the co-conspirator's hearsay statement as evidence of collusion. As discussed above, counsel did object to the hearsay, but was overruled by the Court.

Id. at 1392. Conspiracy to possess a controlled substance with the intent to distribute also requires proof of an agreement to do so, as well as knowing and voluntary participation. Morales, 868 F.2d at 1573. The existence of an agreement can be proved by circumstantial evidence that a common purpose or plan exists. Lyons, 53 F. 3d at 1201 (11th Cir. 1198).

There was overwhelming evidence at trial that showed that Petitioner was conspiring with others to sell crack cocaine. Although Johnson and Mitchell testified that they only dealt powder cocaine to Petitioner, there was evidence that Petitioner cooked the powder cocaine into crack cocaine and distributed it. When Petitioner was first detained by police, 4.5 grams of crack cocaine was found on his person. Petitioner then admitted to having more crack cocaine at his residence, and officers found a large amount of crack cocaine, scales, and plastic bags at his residence. Further, officers found materials that were commonly used to cook crack cocaine containing crack cocaine residue on them at the residence. Mitchell also testified that he and Petitioner discussed whether the powder cocaine was good enough to cook into crack cocaine. Moreover, there was evidence that co-defendant Kitty Smith helped Petitioner distribute the crack by maintaining a residence where the powder cocaine was cooked into crack. Although there was no direct testimony that there was an agreement between the parties to sell crack cocaine, the circumstantial evidence shows that there was a scheme to purchase powder cocaine, cook the powder cocaine into crack, and distribute the crack.

Because there was ample evidence presented at trial that Petitioner was guilty of the crimes charged in the indictment, and because Petitioner has failed to present any evidence that his counsel was working with the government to obtain his conviction, his claim that his counsel colluded with the Government are without merit.

### B.  Prosecutorial Misconduct

Petitioner's remaining claims include allegations that the Government lied in its opening statement and used false testimony from witnesses at trial. To constitute prosecutorial misconduct, the statements must (1) be improper and (2) prejudicially affect the substantial rights of the defendant. U.S. v. Wilson, 149 F.3d 1298, 1301 (11th Cir. 1998). "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome [of the trial] would be different." Id. (quoting United States v. Hall, 47 F.3d 1091, 1098 (11th Cir. 1995).  To make this determination, the court must consider the context of the entire trial as well as any curative instructions. Id. Proper curative instructions may make a prejudicial remark harmless. See United States v. Thomas, 62 F.3d 1332, 1343 (11th Cir. 1995).

The statements made by the Government in its opening statement did not result in prejudice to Petitioner's substantial rights. During its opening statement, the Government stated that it would present the testimony of four co-conspirators, at least one whom would testify that Petitioner sold him crack cocaine. Although the Government only presented the testimony of two co-conspirators, both whom denied dealing crack cocaine with Petitioner, the comments did not affect the outcome of the trial. There was ample evidence outside of the prosecutor's statements that Petitioner was selling crack cocaine. Moreover, the two curative instructions given by the Court that the lawyers' statements were not evidence rendered the remarks harmless.

Petitioner also contends that the Government knowingly used perjured testimony from Johnson and Mitchell. Despite Petitioner's contentions, he does not present any evidence that suggests that the testimony of Johnson and Mitchell was untruthful. To obtain relief based on the Government's use of perjured testimony, a petitioner must show: (1) the contested statements

were actually false, (2) the statements were material, and (3) the Government knew they were false. United States v. Bailey, 123 F.3d 1381, 1395 (11th Cir. 1997). Petitioner has failed to show any of these elements. Moreover, the Government maintains that the testimony it presented at trial was truthful.

Because Petitioner was not prejudiced by the Governments remarks during its opening statement, and because Petitioner has failed to show that the testimony of Johnson and Mitchell was not truthful, Petitioner's claims of prosecutorial misconduct are without merit.

## CONCLUSION

For the above reasons, **IT IS RECOMMENDED** that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 be **DENIED**. In addition, and pursuant to the requirements of Section 11(a) of the Rules Governing Section 2255 Proceedings, it does not appear that Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Accordingly, **IT IS FURTHER RECOMMENDED** that the Court **DENY** a certificate of appealability in its final order.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this RECOMMENDATION with the district judge to whom this case is assigned WITHIN FOURTEEN (10) DAYS after being served a copy thereof.

**SO RECOMMENDED**, this 10th day of May, 2012.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge